IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Howard Jay Coleman, | ) | Case No. 12-48826 |
| | ) | |
| Debtor. | ) | Hon Carol A. Doyle |

**NOTICE OF FEE APPLICATION OF
MORGAN & BLEY, LTD., DEBTOR'S CO-COUNSEL**

TO: SEE ATTACHED SERVICE LIST

TO CREDITORS AND PARTIES IN INTEREST OF THE DEBTOR: Please be advised that on December 4, 2013, pursuant to § 330 of the Bankruptcy Code, and Bankruptcy Rule 2016, Keevan Morgan and Alanna G. Morgan of Morgan & Bley, Ltd., Co-Counsel for the Debtor, Howard Coleman, in this Chapter 11 case and not individually, have filed their First and Final Fee Application (hereafter, the "Application") for the payment of fees and costs, for a total of $29,752.50, of which $10,000.00 was paid as a retainer when counsel was employed and a voluntary reduction of $2,260.00 was credited, leaving a requested balance of $17,665.56, and have set the same for **hearing on December 18, 2013, at the hour of 10:30 a.m.** The fees The hearing is set before the Honorable Judge Carol A. Doyle, United States Bankruptcy Judge, or any Judge sitting in her tead, in Courtroom 742 of the United States Bankruptcy Court, or any other courtroom therein, 219 South Dearborn Street, Chicago, Illinois.

/s/ Keevan D. Morgan

**CERTIFICATE OF SERVICE**

I, Keevan D. Morgan, an attorney, caused a copy of this Application and Notice to be served electronically upon the ECF service list. All Creditors and Parties in Interest of the Debtor were served with this Notice of First and Final Fee Application by regular U.S. mail, first class postage, pre-paid before the hour of 4:30 p.m. on December 4, 2013, and the Debtor by email on that date.

/s/ Keevan D. Morgan

Keevan D. Morgan
Morgan & Bley, Ltd.
900 West Jackson Blvd.
Suite 4 East
Chicago, Illinois 60607
312.243.0006
ARDC No. 958844

## Service List
## 12-48826

| | | |
|---|---|---|
| Bank of America, N.A.<br>450 American Street<br>Simi Valley, CA 93065-6285 | Bank of America, N.A.<br>c/o Andrew J. Nelson<br>Pierce & Associates<br>1 N. Dearborn<br>Suite 1300<br>Chicago, IL 60602 | Bank of America/Countryside<br>Green Tree Servicing, LLC<br>7340 S. Kyrene Rd. T-120<br>Tempe, AZ 85283-4573 |
| J. Kevin Benjamin<br>Benjamin Brand, LLP<br>1016 W. Jackson Blvd.<br>Chicago, IL 60607-2914 | JP Morgan Chase Bank, Natl. Assn.<br>c/o Peter C. Bastianen<br>Codilis & Associates, P.C.<br>15W030 North Frontage Road, Suite 100<br>Burr Ridge, IL 60527-6921 | JPMorgan Chase Bank, National Association<br>c/o Gloria C. Tsotsos<br>Codilis & Associates, P.C.<br>15W030 North Frontage Road, Suite 100<br>Burr Ridge, IL 60527 |
| JP Morgan Chase Bank,<br>National Association<br>Chase Record Center<br>Attn: Corres Mail<br>700 Kansas Lane Mail Code LA4-5555<br>Monroe, LA 71203-4774 | JP Morgan Chase Bank<br>PO Box 24696<br>Columbus, OH 43224-0696 | Chase Bank<br>Attn: Bankruptcy<br>PO Box 15298<br>Wilmington, DE 19850-5298 |
| Chase Bank<br>PO Box 33035<br>Louisville, KY 40232-3035 | Susan L. Coleman<br>2346 N. Sarazen Drive<br>Vernon Hills, IL 60061-4565 | Howard J. Coleman<br>2346 N. Sarazen Drive<br>Vernon Hills, IL 60061-4565 |
| Department of the Treasury<br>Internal Revenue Service<br>PO Box 7346<br>Philadelphia, PA 19101-7346 | Discover Bank<br>DB Servicing Corporation<br>PO Box 3025<br>Waterloo, IA 50704-4622 | Discover Financial Services<br>Attn: Bankruptcy Department<br>PO Box 3025<br>New Albany, OH 43054-3025 |
| GMAC Mortgage, LLC as servicer for Wells Fargo<br>c/o Joel P Fonferko<br>Codilis & Associates, PC<br>15W030 North Frontage Rd.<br>Suite 100<br>Burr Ridge, IL 60527-6921 | GMAC Home Equity<br>3451 Hammond Avenue<br>Waterloo, IA 50702-5300 | GMAC Mortgage<br>PO Box 4322<br>Waterloo, IA 50704-4622 |
| GMAC Mortgage, LLC<br>as servicer for Wells Fargo Bank<br>Attn Bankruptcy<br>1100 Virginia Drive<br>Fort Washington, PA 19034-3204 | Green Tree Servicing, LLC<br>c/o Toni Dillon<br>Pierce & Associates<br>One North Dearborn, Suite 1300<br>Chicago, IL 60602 | Green Tree Servicing As Successor In Interest<br>1400 Turbine Drive<br>Rapid City, SD 57703-4719 |
| Green Tree Servicing, LLC<br>PO Box 0049<br>Palatine, IL 60055-0001 | Green Tree Servicing, LLC<br>PO Box 6172<br>Rapid City, SD 57709-6172 | Illinois Department of Revenue<br>Bankruptcy Section<br>PO Box 64338<br>Chicago, IL 60664-0338 |
| Illinois Department of Revenue<br>James R. Thompson Center<br>Concourse Level<br>100 West Randolph Street<br>Chicago, Illinois 60601-3274 | Illinois Department of Revenue<br>PO Box 19044<br>Springfield, IL 62794-9044 | Internal Revenue Service<br>230 S. Dearborn<br>Room 2600<br>Chicago, IL 60604 |

Internal Revenue Service
550 Main Street #1000
Cincinnati, OH 45202-5212

Patrick S. Layng
Office of the U.S. Trustee, Region 11
219 S. Dearborn St.
Room 873
Chicago, IL 60604-2027

Nissan Motor Acceptance
PO Box 660360
Dallas TX 75266-00360

Ocwen Loan Servicing
c/o Peter C Bastianen
Codilis & Associates, PC
15W030 North Frontage Rd.
Suite 100
Burr Ridge, IL 60527-6921

United States Department of Justice
c/o U.S. Attorney General
950 Pennsylvania Avenue, NW
Washington DC 20530-0001

Wells Fargo Bank, National Association
c/o Ocwen Loan Servicing, LLC
Attn: Bankruptcy Department
P.O. Box 24605
West Palm Beach, FL 33416-4605

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Howard Jay Coleman, | ) | Case No. 12-48826 |
| | ) | |
| Debtor. | ) | Hon Carol A. Doyle |

## MORGAN & BLEY, LTD.'S FIRST AND FINAL FEE APPLICATION

Now comes Morgan & Bley, Ltd. (the "Attorneys"), co-counsel for the Debtor, Howard J. Coleman, in the above captioned bankruptcy case, and hereby submits this Final Fee Application (the "Fee Application") pursuant to 11 U.S.C. §§ 330 and 331 of the U.S. Bankruptcy Code, requesting $29,752.50 for Attorneys' Fees and $173.06, for a total of $29,925.56, of which $10,000.00 was paid as a retainer when counsel was employed and less a voluntary reduction of $2,260.00, leaving a requested balance of $17,665.56. In support of this application, the Attorneys state as follows:

### §1. Results Obtained

1. The Attorneys were instrumental, together with co-counsel, in obtaining confirmation of the Debtor's Reorganization Plan. All the rest is commentary.

2. When the Attorneys met the Debtor, he was in significant distress. The Debtor was one of two owners of a business that organized "Events" such as weddings and other parties. However, that business is marginal, although it had attracted some suitors, and one in particular, because it does have a certain amount of good will in the market, and that was valuable. The Debtor had also invested in some real estate, a three flat building and a two flat building, which for a small business person such as the Debtor, was of a significant amount of value in the neighborhood of $1 million. It was also possible at the time of filing, that the lack of sufficient income from the Events business could ripple own and cause a loss of the Debtor's home.

3. The Debtor had first attempted to resolve his financial distress by filing a case under Chapter 13 of the Bankruptcy Code on July 26, 2012. However that case was dismissed when it came to the Debtor's attention that he was ineligible for relief under Chapter 13 because he had too much secured debt. Therefore, the Debtor filed this Chapter 11 case on December 13, 2012, hoping to reach a resolution with each claim of his creditor.

### § 2. Fee Requested

4. The Attorneys were employed a few months after the case was filed after the request of the United States Debtor for the Debtor to retain additional counsel to assist him in the Chapter 11 process.

5. The Attorneys received a $10,000 retainer in relation to their employment upon application to the Court for same, both of which requests were granted.

6. The Attorneys have expended 71.7 hours of time with a value of $29,752.50 and have advanced $173.06 in costs in representing the Debtor, for a total of $29,925.56, but have voluntarily reduced the amount by $2,260.00 that had been allocation to services related to this Petition.

7. At their customary rates, the average hourly charge for the Attorneys' services provided herein is $418.00.

### § 3. Summary of Services Rendered

8. During the case, the Attorneys' services comprised but were not limited to the following: (a) exploring the possibility of selling the Debtor's Events Business pursuant to Bankruptcy Code Section 363; (b) reviewing the Debtor's loan documents regarding his obligations regarding his secured lenders' and other cash collateral; (c) objecting to JP Morgan's Motion to Modify Stay and successfully negotiating a resolution thereof; (d) objecting to Bank of America's Motion to Modify

Stay and successfully negotiating a resolution of the same; (e) assisting the Debtor with the process of preparing and filing its Monthly Operating Reports; (f) reviewing and analyzing the Debtor's pre and post filing financial performance in Order to develop a Plan and Disclosure Statement; (g) drafting the Debtor's Chapter 11 Plan and amending the same; (h) drafting the Debtor's Disclosure Statement and amending the same; (i) drafting and serving all creditors and parties in interest with a Notice and Order concerning and delivering to them the Debtor's Plan, Disclosure Statement and ballots in connection with confirmation; (j) ensuring that sufficient creditors in furtherance of the Plan's confirmation were cast, without, however, soliciting votes for or against confirmation were cast, without, however, soliciting votes for or against confirmation because the Disclosure Statement and Plan hearings were combined, and, therefor no Disclosure Statement had been approved at the time the Plan was confirmed; (k) preparing for and attending the confirmation hearing. In addition, the Attorneys have included a modest estimated time to prepare and present the Debtor's Motion for Final Decree. For the Court's convenience, these services have been separated into categories and are set forth in detail below.

## § 4. Additional General Information

9. This is the Attorneys' First and Final Fee Application in this case.

10. No agreement or understanding exists between the Attorneys and any other entity for a division of compensation and reimbursement to be received herein or in connection with this case.

11. Several legal professionals employed by the Attorneys performed services regarding this matter. A breakdown of each Attorney's hourly rate and the number or total hours expended thereby in providing legal services is as follows.

| PROFESSIONAL | TOTAL HOURS | FEES AT ATTORNEY RATE |
|---|---|---|
| Keevan D. Morgan | 61.2 @ 450.00/hr | $27,495.00 |
| Alanna G. Morgan | 10.5 @ 215.00/hr[1] | $ 2,257.50 |
| **TOTAL** | 71.7 hrs | $29,752.50 |

12. During the Application Period, every reasonable effort was made to have the services rendered to the Debtor performed by the qualified professional charging the lowest hourly rates consistent with the level of service, experience, and efficiency required of a given task.

13. The Attorneys were employed as co-counsel per the general request of the United States Trustee for the Debtor to obtain such counsel. The attorneys and co-counsel Kevin Benjamin were very diligent in not duplicating each other's efforts. For instance, the Attorneys made very few Court appearances and concentrated their efforts on the Debtor's Plan, Disclosure Statement, and certain creditor Motions, among other things, while Mr. Benjamin's firm concentrated its efforts elsewhere, more or less handling the court work. Where both firms had input on any particular matter, it was minimal, appropriate, and in the Client's interests.

14. The Attorneys respectfully submit that their services to the Debtor during the Application Period have, in all respects, been reasonable, necessary, and beneficial to the Estate, as further discussed herein.

15. The Attorneys maintain computerized records of the time expended by each Attorney. Such records are attached hereto as Exhibit A and are incorporated by reference (the "Billing Statements"). The Billing Statements set forth in detail the services which the Attorneys rendered

---

[1] Ms. Morgan was a law clerk until admitted to the Illinois State Bar and sworn in on October 31, 2013.

on behalf of the Debtor, the dates those services were rendered, the nature of the services, the amount of time spent on each task, an the identity of each Attorney who performed such services. The Billing Statements have been edited for privilege purposes. A detailed synopsis of the Billing Statements appears in Section 7 below.

16. The Attorneys also maintained records of all actual and necessary expenses incurred in connection with the services provided to the Debtor, which are included in the Billing Statements. The Attorneys advanced in expenses on behalf of the Estate in connection with the legal services rendered to the Debtor during the Application Period as detailed on the Billing Statements.

## § 5. Standards for Compensation & Compliance Therewith

17. The Court may award a professional person employed under §327, such as the Attorneys, "reasonable compensation for actual, necessary services rendered." 11 U.S.C. §330(a)(1)(A.)

18. Pursuant to Section 330(a)(1)(A) of the Code the court may award, "reasonable compensation for actual, necessary services rendered by the trustee, examiner, ombudsman, professional person, or attorney and by any paraprofessional person employed by such person, after notice to parties in interest and the United States Trustee and a hearing."

19. If the services of an attorney employed under §327 are reasonably likely to benefit a debtor's estate, they should be compensated. *In re: Pro-Snax Distributors, Inc.,* 157 F.3d 414, 421 (5th Cir. 1998). Factors to be considered in making an award for interim fees depend on "whether the services rendered promoted the bankruptcy process or administration of the estate in accordance with the practice and procedures provided under the Bankruptcy Code and Rules for the orderly and prompt disposition of a bankruptcy case and related adversary proceedings." *In re: Spanjer Bros., Inc.,* 191 B.R. 738, 748 (Bankr. N.D. Ill. 1996) (Squires, J.).

20. The Court may also reimburse a professional person employed under §327 for actual and necessary expenses. Title 11 U.S.C. §330(a)(1)(B).

21. The fees charged by the Attorneys are billed in accordance with the firm's customary billing rates in effect during the period for which compensation is sought. The rates charged by the Attorneys in this case are the same rates charged for professional services in comparable non bankruptcy cases, and in fact, based upon the Attorneys' experience, appear to be somewhat lower. Staffing was accomplished efficiently.

22. All professional services and costs were necessary and appropriate to the administration of this bankruptcy case.

23. The Attorneys have sent notice of this Motion in the form attached hereto as Exhibit B to all interested parties and the United States Trustee on 20 days notice.

### 7. Categories & Details of Services Rendered

| Category Name | Description of Matter | Time Involved | Fees Requested |
|---|---|---|---|
| 363 Sale | Services rendered in connection with a possible Rule 363 Sale of stock | 2.4 hr | $1,080.00 |
| Admin.DIP | Services rendered regarding the debtor in possession account | .2 hr | $90.00 |
| Admin.Employ | Drafted, revised, submitted, and appeared in court on a Motion to Employ Counsel | .9 hr | $345.00 |

| Admin.Reports | Services rendered with respect to the preparation, filing, execution and review of the Debtor's monthly operating reports | 3.3 hr | $1,476.00 |
|---|---|---|---|
| Cash | Services rendered regarding possible need for cash collateral | .2 hr | $90.00 |
| Claims.BOA | Services rendered with respect to the claims of Bank of America | 1.4 hr | $630.00 |
| Claims.GMAC | Services rendered with respect to the claims of GMAC | .5 hr | $225.00 |
| Claims.Green | Services rendered with respect to the claims of Green Tree | .5 hr | $225.00 |
| Claims.JP | Services rendered with respect to the claims of JP Morgan | .8 hr | $360.00 |
| Confirmation | Services rendered regarding the confirmation hearing | 2.8 hr | $1,260.00 |
| Disclosure Statement | Services rendered regarding the preparation, drafting, filing, and amending of debtor's Disclosure Statement | 7.9 hr | $3,555.00 |
| Fees | Services rendered regarding the payment of attorney's fees | 10.6 hr | $3,266.00 |
| Final Decree | Services rendered regarding obtaining the Final Decree in the case | 1.5 hr | $557.50 |

| | | | |
|---|---|---|---|
| Plan | Services rendered regarding preparing, negotiating, filing, and amending debtor's Plan | 25.2 hr | $11,102.00 |
| Stay.BOA | Services rendered regarding Bank of America's Stay Motion | 5.8 hr | $2,583.00 |
| Stay.JP | Services rendered regarding JP Morgan's Stay Motion | .8 hr | $360.00 |
| Voting | Services rendered to obtain votes by Creditors (without soliciting a vote for or against the Plan) and to presecute a Motion to count the decisive late-filed ballot required to avoid a cramdown and instead to obtain 100% voting creditor claim approval of the plea. | 6.6 hr | $2,359.00 |

**363 SALE:** Reviewed documents; Emails with client regarding existing but expired letter agreement; Drafted Purchase Offer for client's stock; Conferences with client regarding Rule 363 Sale for his stock, the draft of purchase offer, and the status of purchase.

**ADMIN.EMPLOY:** Reviewed documents, including emails from Kevin Benjamin regarding the background of the case and ECF for the Order of Employment; Conferences with Kevin Benjamin regarding the Motions to Employ Counsel; Prepared for and appeared in court regarding the Motion to Employ Counsel.

**ADMIN.DIP:** Emails with client regarding the opening of his Debtor in Possession account for each building, how to segregate funds, and account consolidation.

**ADMIN. REPORTS:** Emails with client regarding Monthly Report forms; Conferences with client regarding accounts and monthly reports, what the monthly reports reveal in terms of income and expense, and revisions and amendments to the monthly reports; Reviewed documents, including review of the proposed and monthly reports from client and revisions thereto, review of ECF for Notifications regarding the reports, and review of emails from Kevin Benjamin to Gretchen Silver regarding the reports and case status; Conferences with Kevin Benjamin regarding Motion to Modify Report Form; Emails with Kevin Benjamin regarding form of the monthly report and amendments

thereto; Emails with Gretchen Silver regarding the form of monthly reports and reporting deficiencies; Filed December and January Reports.

**CASH:** Reviewed loan documents to determine possible need for cash collateral orders.

**CLAIMS.BOA:** Reviewed documents, including Bank of America's claims and proof of claim, the transfer of claims to Green Tree Servicing, Bank of America's Plan Objection, the Notice from Green Tree Servicing regarding potential options, other documents in client file regarding Bank of America's claims to assist in preparation of response to Bank of America's Motion to Terminate the Automatic Stay; emails between Kevin Benjamin and Bank of America counsel Toni Dillon regarding the status of a potential deal, letter from Bank of America regarding a loan modification, and ECF for the continued hearing date; Emails to Toni Dillon regarding potential resolution and settlement.

**CLAIMS.GMAC:** Researched GMAC's position regarding Debtor's Plan; Reviewed ECF for Notice regarding the transfer of claim to Green Tree;

**CLAIMS.GREEN:** Reviewed servicing letter from Green Tree; Reviewed notice of transfer by Green Tree to Wells Fargo; Emails to Tom Dillon regarding the Green Tree 74k claim; Reviewed Green Tree's new claim

**CLAIMS.JP:** Emails with client with questions regarding payment of the JP Morgan Claim, adequate protection payments, and the interest rate sought by JP Morgan on its mortgage; Emails with creditor's lawyer Peter Bastianen regarding payments, interest rate request for the Plan, adequate protection payments, potential settlement, and the hearing on 7.10.13; Conferences with client regarding the interest rate sought by JP Morgan on its mortgage.

**CONFIRMATION:** Reviewed and filed the Discover Card acceptance ballot; Emails with Debtor and Kevin Benjamin regarding ballots, 11.6.13 hearing, and confirmation hearing; Emails with Gretchen Silver regarding confirmation hearing; Conference with Kevin Benjamin regarding confirmation hearing and the Fry Second Mortgage issue; Reviewed Order regarding new hearing date; Prepared and filed ballot report; Conference with Debtor regarding payments and to obtain substantial confirmation that final decree is possible; Prepared for and attended confirmation hearing

**DISCLOSURE STATEMENT:** Conferences with client regarding the Disclosure Statement and updated projections; Emails with Kevin Benjamin regarding the Disclosure Statement, the Notice to Creditors, a possible settlement with Bank of America, and debtor's operating reports; Drafted Disclosure Statement for client and co-counsel review; Amended the Disclosure Statement to reflect the expected deals with the impaired banks; Conferences with Kevin Benjamin regarding the Disclosure Statement, the Notice to Creditors, and the 8.7.13 Disclosure Statement Amendment Hearing; Emails with Gretchen Silver regarding the numbers in the reports, negotiations with the banks, and any Disclosure Statement Amendments to be made thereby; Emails with client regarding the Disclosure Statement, the format of a five year projection, the 7.10.13 hearing, the client's

projections, the client's meeting with Theresa Benjamin and the United States Trustee, a possible settlement with Bank of America, the client's operating reports, payments to GMAC to cure pre-petition defaults, necessary revisions to projections, Disclosure Statement Amendments, status and future of the case, and the sale of A-Z Entertainments and the sale's effect on projections; Reviewed documents, including A-Z Entertainment's balance sheet and statement of last two years of performance, ECF for notification regarding the Amended Disclosure Statement, ECF for Orders and Notices regarding the Disclosure Statement, MORS for both the initial updated Disclosure Statement for overall profit and loss, the new Purchase Offer for A-Z Entertainments, emails from Kevin Benjamin to Gretchen Silver regarding the Entertainment Events Business's finances, and a memo from Kevin Benjamin regarding 7.10.13 hearing; Postage and copies for 31 copies of the Disclosure Statement, Plan, Proposed Order, and Ballot, which were each 47 pages total.

**FEES:** Review of billing worksheet; Drafted, revised, and filed Fee Petition; Emails with Kevin Benjamin regarding fee applications; Conferences, phone calls, and emails between Keevan Morgan and Alanna Morgan regarding preparation of fee petition;

**FINAL DECREE:** Estimated time to gather information concerning drafting motion for final decree and appearing in court regarding the same

**PLAN:** Researched the impairment of secured classes, the interest rates in the Plan, the absolute priority rule in the case of an individual debtor, and possible 111(b) election by the banks; Calculated Plan payments; Reviewed documents, including the claims docket, the GMAC and the JP Morgan claims on file regarding the Plan, emails between the debtor and Bank of America, emails between the client and Kevin Benjamin regarding the sale of A-Z Entertainment and other questions, the proposed merger agreement with Boom, the ECF for the new status date, the treatment of the IRS against the claims of the IRS and Illinois Department of Revenue, and the Order regarding the Plan and Disclosure Statement hearing; Emails with client regarding payment details for the Plan, issues with Bank of America and other information regarding Bank of America for the Plan, the first draft of the Plan, the real estate taxes, the comparative balance sheet requested by the United States Trustee, the status of the sale of A-Z Entertainments and concerns about the sale, and GMAC's position regarding the insurance company agreeing to defend the client's claim; Drafted, revised, and filed the Plan and the Order confirming the Plan and Disclosure Statement; Conferences with the client regarding factual background to draft the Plan, the status of the Plan, payments to GMAC and JP Morgan, the sale of A-Z Entertainment, the possibility of the Plan without the sale of A-Z Entertainment, documents for Peter Bastianen, the status of the compromise with the bank, interest rate alternatives, amending and revising the Plan, and the United State's Trustee's review of the revised Plan and Disclosure Statement; Conferences with Kevin Benjamin regarding status, strategy, 11.6.13 scheduled confirmation and disclosure statement hearing; Emails with Theresa Benjamin regarding Bank of America information for the Plan; Emails with Kevin Benjamin regarding the Plan, the interest rates in the plan, the plan payment calculation, the first draft of the Plan, the comparative balance sheet requested by the United States Trustee, the status of the sale of A-Z Entertainments and concerns about the sale, the status of the compromise with the bank, amending the Plan, follow-up to the 9.11.13 hearing, confirmation that Greentree did not file a proof of claim

regarding its own mortgage, the United State's Trustee's review of the revised Plan and Disclosure Statement, the Order combining the Plan and Disclosure Statement hearing, and Bank of America treatment under the Plan; Emails to Peter Bastianen regarding the interest rate, possible confirmation of the Plan, possible settlement or compromises, and the language used in the Plan in relation to Bank of America; Emails with Gretchen Silver regarding the Plan, the 9.11.13 hearing on the Plan and Disclosure Statement, follow-up on the 9.11.13 hearing, and proposed revisions to the Plan and the Disclosure Statement; Amended Plan to reflect the impaired status of the Banks and other revisions.

**STAY.BOA:** Reviewed and analyzed Bank of America's proof of claim and Motion to Modify the Stay; Conferences with client regarding background facts for the Response to Bank of America's Stay Motion; Emails to Kevin Benjamin regarding Response to Bank of America's Stay Motion; Drafted Response to Bank of America's Stay Motion; Filed the Response to Bank of America's Stay Motion with exhibits; Prepared for and attended hearing regarding Bank of America's Stay Motion.

**STAY.JP:** Emails to client regarding JP Morgan's Motion to Terminate the Automatic Stay; Reviewed JP Morgan's Motion to Terminate the Automatic Stay and ECF for the Adequate Protection Order Notice; Conferences with Kevin Benjamin regarding the Motion to Terminate the Automatic Stay; Conferences with counsel for JP Morgan Peter Bastianen regarding the Motion to Terminate the Automatic Stay

**VOTING:** Reviewed email regarding Nissan's request for a package; Emails with Kevin Benjamin and Peter Bastianen regarding ballots for Bastianen's clients; Reviewed notice and ballot by Class 3 accepting Plan; Emails with Kevin Benjamin and client regarding the ballots and votes; Emails with Kevin Benjamin and Tom Dillon regarding Green Tree vote; Reviewed docket and strategy regarding lack of vote by Green Tree on Fry Second Mortgage Claim; Reviewed Green Tree's last form letter and other emails to reach correct Green Tree contact person regarding their lack of vote; Emails and phone calls with Betty and Howard regarding Green Tree and their vote; Conferences between Keevan Morgan and Alanna Morgan regarding Motion To Accept Late Ballot; Researched for, drafted, revised, and filed Motion To Accept Late Ballot and Notice thereof; Filed Green Tree's Ballot; Conference with client regarding payments for substantial confirmation that final decree is possible

### § 7. Summary of Results Obtained

24. All of the above referenced tasks directly benefitted the Estate, by permitting the Debtor to reach a compromise with its largest secured creditors, Bank of America and J.P. Morgan Trust, and to confirm the Debtor's First Amended Plan of Reorganization and Disclosure Statement.

25. The Attorneys also prepared the instant Fee Application, which is required under Title 11 for compensation of professionals retained by the Estate.

26. The foregoing professional services and costs were necessary and appropriate to the administration of this bankruptcy case. The professional services performed were in the best interests of the creditors and parties in interest, and were provided without unnecessary duplication of effort or expense incurred by other professionals involved in the case. Compensation for the services as requested is commensurate with the complexity, importance and nature of the problems, issues or tasks involved.

27. The professional services were performed expeditiously and efficiently. The Attorneys have exercised good faith in billing judgment, and has not sought compensation for "excessive, redundant, or otherwise unnecessary" time. *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S. Ct. 1933, 1939-40 (1983).

28. The requested fees are reasonable. Not only did the Attorneys undertake the work with the good faith hope of reorganizing the Debtor and ensuring compensation for all creditors herein, the Attorneys were able to secure a favorable result with respect to the same. Consequently, since the Attorneys have administered the estate to the extent that it is likely all Creditors will receive much more than they would have absent the Debtor's reorganization, the Attorneys deserve compensation for their services.

### § 8. Services Rendered, Time Involved, and Compensation and Costs Requested

29. The Attorneys represented the Debtor in this matter on an hourly basis, as set forth fully by **Exhibit A.**

30. The Attorneys' efforts have enabled the Debtor to retain possession of all his real estate and enabled the Debtor and all creditors and parties in interest herein to maximize the ultimate capitalization with respect to the same. Furthermore, the Attorneys have been essential to administering this matter without substantial losses to the Debtor.

31. All Creditors will be paid 100% under the Plan.

32. Consequently, the Attorneys respectfully request that this Honorable Court award $29,752.50 in fees and $173.06 in costs, minus $10,000.00 for payments already received and less $2,260.00 of the time otherwise allocated to the preparation and presentation of this Application for a total of $17,665.56 in connection with their services regarding their Chapter 11 case. An itemized statement of costs incurred is also included at the end of the Billing Statement attached hereto as **Exhibit A.**

### § 9. Request For Reduced Notice Period

33. Pursuant to Bankruptcy Rule 2002(a)(6), twenty-one days notice is required to parties in interest for a hearing on any entity's request for compensation or reimbursement of expenses if the request exceeds $1,000.

34. The entry of a final decree in this case is scheduled for December 18, 2013, and the matter of this Fee Petition should be resolved before the case is closed in order for the Petition to be granted, leaving 14 days notice of this application to interested parties.

35. However, the Court may in its discretion allow action despite failure to comply with the required notice period. Bankruptcy Rule 9006(b)(a) states:

> Except as provided in paragraphs (2) and (3) of this subdivision, when an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if the request therefor is made before the expiration of the period originally prescribed or as extended by a previous order or (2) on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.

36. Because Chapter 11 aims to rehabilitate the debtor and avoid forfeitures by creditors, bankruptcy courts are necessarily entrusted with "broad equitable powers to balance the interests of the affected parties," and determining whether to allow late action under 9006(b)(1) entails a correspondingly equitable inquiry. *Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 113 S. Ct. 1489, 1495 (U.S. 1993).

37. The Plan in this case was confirmed on November 6, 2013, after diligent work by the Debtor's Attorneys. Given the significant amount of time devoted to last minute complications in getting the Plan confirmed, the Thanksgiving holiday, and several emergency legal matters in mid-November, including the possible filing of two last minute Chapter 11 Bankruptcy cases, the Attorneys were unable to meet the full 21 day notice period.

38. For these reasons, the Attorneys ask the Court in its discretion to shorten the twenty-one day notice period required for this application.

WHEREFORE, Keevan D. Morgan of Morgan & Bley, Ltd. respectfully applies to the Court for an award of fees and costs in the total amount of $29,752.50, with a balance due of $17,665.56 for an Order authorizing and directing the Debtor to make prompt payment of the

amount awarded and for all other and further relief in their favor as this Court deems fair and just.

                                        Morgan & Bley, Ltd.

                                By: /s/ Keevan D. Morgan

Keevan D. Morgan
Morgan & Bley, Ltd.
900 West Jackson Blvd.
Suite 4 East
Chicago, Illinois 60607
312.243.0006
ARDC No. 958844